UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABU KABIR and MAHMUDA
KABIR,

                  Plaintiffs,

v.                                     Civil Case No. 14-11563
                                     Honorable Linda V. Parker

UNITED STATES OF
AMERICA,

                  Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This lawsuit arises from a November 17, 2011 collision between an automobile driven by Abu Kabir, in which Mahmuda Kabir was a passenger, and a United States Customs and Border Patrol ("Border Patrol") cruiser driven by Borden Patrol Agent Rodd Lane ("Agent Lane"). On April 18, 2014, Plaintiffs filed the action against Defendant United States of America ("United States" or "government") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. Plaintiffs allege that Agent Lane negligently drove the cruiser, leading to the collision and Plaintiffs' resulting serious impairments of a body function. Presently before the Court is the government's motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56 on March 6, 2015. The motion has been fully briefed. Finding the facts

and legal arguments sufficiently presented in the parties' pleadings, the Court is

dispensing with oral argument pursuant to Eastern District of Michigan Local Rule

7.1(f).  For the reasons that follow, the Court grants the government's motion.

## I.    Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is

appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The central inquiry is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

After adequate time for discovery and upon motion, Rule 56 mandates summary

judgment against a party who fails to establish the existence of an element essential to

that party's case and on which that party bears the burden of proof at trial.  *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue

of material fact."  *Id*. at 323.  Once the movant meets this burden, the "nonmoving

party must come forward with specific facts showing that there is a genuine issue for

trial."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986) (internal quotation marks and citation omitted).  To demonstrate a genuine

issue, the nonmoving party must present sufficient evidence upon which a jury could

2

reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## II.     Factual Background

On November 17, 2011, at 10:25 a.m., Agent Lane received a notification over Border Patrol's emergency radio frequency of a body floating in the Detroit River near Mt. Elliott Street and Jefferson Avenue in Detroit. (Pls.' Resp., Ex. 3 at 20, ECF No. 22.) In Agent Lane's experience, this usually indicated that someone fell off a boat, jumped in playing, or was trying to commit suicide. (*Id*. at 49-50.) At that time, Agent Lane was in the area of the Keans Marina at St. Jean Street and Jefferson Avenue in Detroit. (*Id*. at 19.) After informing dispatch that he would respond, Agent Lane activated his emergency lights and siren. (*Id*. at 26.) Agent Lane's cruiser, which bore the Border Patrol logo on the front and sides of the vehicle, was equipped with a roof-mounted bar of emergency lights. (Def.'s Mot., Ex. 2, ECF No. 18.)

Agent Lane proceeded westbound on Jefferson Avenue, intending to make a left turn onto Mt. Elliott.  (Pls.' Resp., Ex. 3 at 26.)  Driving in the furthest left lane on Jefferson, Agent Lane slowed and stopped at several lights between St. Jean and East Grand Boulevard and for people not using the crosswalks.  (*Id*. at 29, 30.)  Agent Lane also used the cruiser's "yelp" button, which is like a horn that changes pitch, to make sure drivers in approaching cars and pedestrians in the vicinity were aware of him.  (*Id*. at 33-34.)  Agent Lane indicated that the traffic on westbound Jefferson became heavier as he got closer to Belle Isle, meaning that there was traffic in all four westbound lanes.  (*Id*. at 27, 28.)

When Agent Lane approached the intersection of Jefferson and Grand Boulevard, he slowed to an almost complete stop to check and make sure that other drivers had stopped their vehicles and were aware of him.[1]  (*Id*. at 31.)  Seeing no cars, people, or obstructions in his way, Agent Lane began to accelerate through the intersection.  (*Id*. at 31-32.)  As he did so, Plaintiffs entered the intersection on Grand

---

[1] Relying on eyewitness John Bridgewater's statement to a Border Patrol investigator that "[t]he Border Patrol car did not slow" (Pls.' Resp., Ex. 6), Plaintiffs argue in their response brief that Agent Lane did not slow down at the intersection of Jefferson and Grand Boulevard.  (Pls.' Resp. Br. at Pg ID 224, ECF No. 22.)  As will be discussed in the next section, however, this statement constitutes inadmissible hearsay which cannot be presented in a form that would be admissible in evidence and thus cannot be offered to support or oppose the summary judgment motion.  *See* Fed. R. Civ. P. 56(c)(2).  Plaintiffs also rely on a statement in a traffic report completed by City of Detroit Police Officer Louis Mueller that Agent Lane "failed to yield" and thus engaged in a "hazardous action."  (*See* Pls.' Resp., Ex. 1.)  As will also be discussed in the next section, this statement likewise is not admissible.

Boulevard, travelling northbound from Belle Isle, in a vehicle driven by Plaintiff Abu Kabir ("Mr. Kabir"). (Def.'s Mot., Ex. 6 at 38, 42.) Mr. Kabir testified that he maintained his speed of 30 m.p.h. as he proceeded into the intersection because, he claims, he had a green light. (*Id.* at 42.) He also testified that he never looked right as he approached or entered the intersection, because he was "going straight, so [he had] no reason to look at the right side." (*Id.* at 43-44.) In the intersection, Plaintiffs' vehicle collided with the driver's side of Agent Lane's cruiser, striking the cruiser between the front and back seat. (Pls.' Mot., Ex. 3 at 33; Def.'s Mot., Ex. 2.)

There is a dispute as to whether the traffic light was green or red for the traffic on Jefferson. (*Compare* Def.'s Mot., Ex. 4 ¶ 4; Ex. 3 ¶ 5 *with* Ex. 6 at 42.) At his deposition, Agent Lane could not recall the color of the traffic light for the traffic on westbound Jefferson. (Pls.' Resp., Ex. 5 at 58.) He testified that the color of the light "determines how [he] go[es] about going through the intersection" in that he uses greater caution if the light is red; however, his "intention is to still go through the intersection with [his] lights and sirens operating. No matter what the color of the light, [he's] still trying to clear the intersection before [he] go[es] through." (*Id.* at 58-59.)

The weather was clear and sunny at the time of the collision. (Def.'s Mot., Ex. 6 at 38; Ex. 8.) Nothing obstructed Mr. Kabir's view of the traffic heading west on Jefferson. (*Id.*, Ex. 7 at 31; *see also* Pls.' Resp., Ex. 4.) At his deposition, Agent Lane identified obstructions-- specifically electrical boxes, small bushes or flowers, and a

5

telephone pole-- which may have prevented him from having a clear view of traffic when he looked left toward Belle Isle before the collision. (Pls.' Resp., Ex. 5 at 44-5.) Agent Lane then stated, however, that he in fact had a "proper view of traffic" as he entered the intersection and slowed down his vehicle. (*Id*. at 46-47.) A photograph of the intersection offered by Plaintiffs represents the degree, or lack thereof, to which the identified objects obstruct the view of northbound Grand Boulevard traffic for westbound Jefferson travelers. (*See* Pls.' Resp., Ex. 4.) Several eyewitnesses indicate that the cruiser's emergency lights and siren were activated before and at the time of the collision. (Def.'s Mot., Ex. 3 ¶¶ 3, 9; Ex. 4 ¶ 3; Ex. 5 ¶¶ 3, 9.)

One of those witnesses, Commelina Reed ("Ms. Reed"), was traveling westbound on Jefferson, stopped at the traffic light at the intersection of Grand Boulevard, when she became aware of Agent Lane's cruiser approaching from behind. (Def.'s Mot., Ex. 3 ¶ 2.) According to Ms. Reed, the cruiser approached the intersection "slowly and cautiously" and "[a]ll traffic heading east and west on Jefferson Avenue had stopped or slowed to allow the Border Patrol vehicle to pass." (*Id*. ¶¶ 3, 4, 9.) Ms. Reed states that the light then turned green for Jefferson traffic and she traveled through the intersection, observing the cruiser's continued approach in her rear view mirror. (*Id*. ¶ 5.) In her rear view mirror, she also witnessed the collision. (*Id*.) Ms. Reed states that Plaintiffs' vehicle traveled through the intersection at a high rate of speed. (*Id*. ¶ 8.)

6

Karen Smith ("Ms. Smith"), also stopped at the Jefferson and Grand Boulevard intersection, driving westbound, observed Agent Lane's vehicle slow down as it approached the intersection.  (Def.'s Mot., Ex. 4 ¶ 3.)  John P. Bridgewater ("Mr. Bridgewater"), also driving westbound on Jefferson at the time of the collision, slowed down when he heard sirens and saw a Border Patrol vehicle traveling behind him with its emergency lights activated.  (Def.'s Mot., Ex. 5 ¶¶ 3, 4.)  Mr. Bridgewater observed approximately four other cars slowing down to let the Border Patrol vehicle pass.  (*Id*. ¶ 4.)  Mr. Bridgewater stopped his vehicle at a traffic signal in front of a gas station on Jefferson, a block east of the Jefferson and Grand Boulevard intersection.  (*Id*. ¶ 5; Def.'s Reply, Ex. 2 ¶¶  3, 4.)  Irma Shisler ("Ms. Shisler") was a passenger in Mr. Bridgewater's vehicle at the time.  (*Id*. ¶ 5.)  Ms. Shisler passed away in March 2013.  (*Id*. ¶ 6.)

The airbags of Agent Lane's and Plaintiffs' vehicles deployed in the collision.  (Def.'s Mot., Ex. 8.)  Mr. and Ms. Kabir exited their vehicle after the accident and were able to walk around.  (*Id*., Ex. 3 ¶ 10; Ex. 4 ¶ 8; Ex. 5 ¶ 9.)  Agent Lane was transported by ambulance to the hospital.  (Def.'s Mot., Ex. 8.)  He suffered a shoulder sprain and deep contusions to his hip and shoulder in the collision.  (*Id*., Ex. 1 at 48.)  City of Detroit Police Officer Louis Mueller ("Officer Mueller") was called to the scene after the collision to complete a State of Michigan Traffic Crash Report.  (*Id*., Ex. 9 ¶ 2.)  Officer Mueller did not issue a citation or ticket to either driver involved in the accident.  (*Id*. ¶¶ 6, 7.)  He did not witness the accident and the facts

7

and conclusions in the report were provided to him by one or more eyewitnesses. (*Id.* ¶¶ 9, 12.) Officer Mueller could not recall whether he spoke with Agent Lane or Plaintiffs. (*Id.* ¶ 11.) Agent Lane testified that he did not give a statement to Officer Mueller after the accident. (Def.'s Mot., Ex. 1 at 47-49.)

Seven months before the collision, on March 2, 2011, Plaintiffs had been involved in a car accident in which Ms. Kabir was injured. (Def.'s Mot., Ex. 7 at 20-21; Ex. 6 at 29-30.) On May 24, 2011, Ms. Kabir submitted an application to the Social Security Administration, claiming that she was rendered completely physically disabled as a result of the accident. (*Id.*, Ex. 6 at 31; Ex. 7 at 24-27; Ex. 11.) In her application, Ms. Kabir stated that she could do nothing during the day, except sometimes go to physical therapy. (*Id.*, Ex. 11.) On July 13, 2011, the Social Security Administration adjudicated Ms. Kabir disabled. (*Id.*, Ex. 12.)

## III.    The Government's Arguments and Plaintiffs' Response

The United States raises three arguments in support of its summary judgment motion. First, the United States contends that the undisputed facts establish that Agent Lane did not act negligently. The United States next argues that it is immune from Plaintiffs' suit under Michigan's No-Fault Act because Plaintiffs were more than fifty percent (50%) at fault. Finally, the United States contends that Ms. Kabir's claims are barred because she was completely disabled before the collision with Agent Lane's vehicle and therefore cannot establish that she suffered a serious impairment of body function as a result of the accident, as required under Michigan's No-Fault Act.

8

In response, Plaintiffs maintain that there are genuine issues of material fact relevant to whether Agent Lane operated his cruiser negligently. Specifically, Plaintiffs contend that Agent Lane did not have a clear view of the intersection before he accelerated through it and suggest that he was traveling at an excessive rate of speed. In support of Plaintiffs' assertions, they rely on Agent Lane's deposition testimony, Officer Mueller's police report, and statements by witnesses contained in an investigative report completed by Border Patrol. (*See* Pls.' Resp. Br. at Pg ID 221, ECF No. 22.) Plaintiffs argue that the declarations submitted in support of the government's motion are inadmissible, as they are unsworn declarations and because the statements within are "riddled with contradictions, misinformation, and shades of the truth" as evidenced by the witnesses' prior statements and/or deposition testimony. (*Id*. at Pg ID 223.) Plaintiffs argue that Mr. Kabir was not more than fifty percent at fault and that Ms. Kabir, regardless of her prior injuries, suffered a serious impairment of body function in the subject collision.

## IV.   Evidentiary Issues

The parties' briefs raise evidentiary issues that must be addressed before the Court sets forth the applicable law and analyzes the parties' legal arguments.

First is Plaintiffs' challenge to the declarations attached to the government's motion. Contrary to Plaintiffs' contention, those declarations are specifically sworn to pursuant to 28 U.S.C. § 1746. Plaintiffs argue that the declarations nevertheless are inadmissible under Federal Rule of Civil Procedure 56(c)(4) because they are "made

9

without personal knowledge, . . . set[] out facts that would be inadmissible in evidence, and/or . . . fail[] to show that the affiant or declarant is competent to testify on the matters stated."  (Pls.' Resp. Br. at Pg ID 223, ECF No. 22, citing Fed. R. Civ. P. 56(c)(4) (providing that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").  Even if prepared by persons other than the declarants (which is not precluded by the statute or rule), the declarations offered by the United States were made on personal knowledge and set forth facts admissible in evidence.  There is nothing suggesting that the declarants are not competent to testify on the matters stated.

Each declarant (Officer Mueller, Ms. Reed, Mr. Bridgewater, and Ms. Smith) provide statements regarding facts of which they have personal knowledge because they investigated the collision (Officer Mueller) or witnessed the collision (the remaining individuals).  The declarations are not rendered inadmissible because they do not contain all information that Plaintiffs find to be relevant and/or because Plaintiffs believe the declarants' statements are contradicted by their prior statements. Plaintiffs had the opportunity (which they in fact used) to supplement the record with their own evidence, including the declarant's prior, purportedly contradictory statements.  Of course, Plaintiffs' rebuttal evidence-- like all evidence submitted by

10

the parties to support or oppose the motion-- must be in a form permitted under Rule

56.

This takes the Court to the second issue: the admissibility of the State of

Michigan Traffic Crash Report.  Plaintiffs seek to use the report to show in part that

Agent Lane was found by Officer Mueller to have engaged in a hazardous action, to

wit "failed to yield."

The Federal Rules of Evidence generally prohibit the introduction of hearsay

testimony in the federal courts.  Fed. R. Evid. 802.  Without doubt, however, Rule 56

allows a court to consider some forms of hearsay evidence in deciding a motion for

summary judgment.  *See* Fed. R. Civ. P. 56(c)(1)(A) (including depositions, affidavits,

and declarations in the materials that may be submitted to support a summary

judgment motion); *see also Celotex Corp.*, 477 U.S. at 324 (providing that the

proffered evidence need not be in admissible form).  The *content* must still be

admissible at trial, however.  *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 145

(6th Cir. 1997) (citing *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994)

("The evidence need not be in admissible form; affidavits are ordinarily not

admissible evidence at a trial. But it must be admissible in content, in the sense that a

change in form but not in content, for example a substitution of oral testimony for a

summary of that testimony in an affidavit, would make the evidence admissible at

trial.")); *see also Celotex*, 477 U.S. at 324 ("For instance, deposition testimony will

assist a plaintiff in surviving a motion for summary judgment, even if the deposition

11

itself is not admissible at trial, provided substituted oral testimony would be admissible and create a genuine issue of material fact.").

Rule 803 of the Federal Rules of Evidence includes "public records", among several categories of evidence that "are not excluded by the hearsay rule". Fed. R. Evid. 803(8). Pursuant to the rule, "[a] record of statement of a public office" is admissible if:

> (A) it sets out:
>
> (i) the office's activities;
>
> (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>
> (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

*Id*. The Supreme Court has held that Rule 803(8) allows for the admission of reports containing opinions and conclusions, as well as facts. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169-70 (1988). The Court held that "[a]s long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." *Id*. at 170. "The 'factual findings' in a report qualifying for a Rule 803(8)[] exception to the hearsay rule must, however, be based upon the knowledge or observations of the preparer of the report." *Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994); *see also Tranter v.*

12

*Orick*, 460 F. App'x 513, 515 (6th Cir. 2012).  Facts contained in a report that are not based on the preparer's first-hand knowledge and any opinions and conclusions based on those facts are therefore not admissible.  *Id.*

Officer Mueller was not present at the scene when the subject collision occurred and he prepared his report based on the statements he obtained from one or more eyewitnesses.  (Def.'s Mot., Ex. ¶¶ 8, 9, 12.)  Officer Mueller provides that he "did not perform a reconstruction of the accident scene or vehicle damage to determine the circumstances of the accident" and he "never had any personal or independent knowledge about which driver was at fault for the accident . . .."  (*Id.* ¶¶ 14, 15.)  Accordingly, Plaintiffs cannot offer the traffic report prepared by Officer Mueller to show that Agent Lane committed a "hazardous action" or "failed to yield". Plaintiffs offer no other evidence offered to support this conclusion.

Similarly, there is no admissible evidence to show that Agent Lane failed to slow down at the Jefferson and Grand Boulevard intersection.  To support this assertion, Plaintiffs offer Mr. Bridgewater's and Ms. Shisler's statements to a Border Patrol investigator, which are contained in the investigator's Motor Vehicle Accident Report.  (*See* Pls.' Resp., Ex. 6.)  The statements, made three days after the collision,

constitute inadmissible hearsay.[2]  *Miller*, 35 F.3d at 1091.  As the *Miller* court

provided:

> "A statement of a third party is plainly not admissible merely because
> contained in a police report. 'It is well established that entries in a police
> report which result from the officer's own observations and knowledge
> may be admitted but that statements made by third persons under no
> business duty to report may not.' "

35 F.3d at 1091 (brackets omitted) (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901,

907 (2d Cir. 1991) (quoting *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir.

1983)).  For the following reasons, the content of Mr. Bridgewater's and Ms. Shisler's

statements cannot be made admissible at trial.

Ms. Shisler passed away in March 2013, over a year before this lawsuit was

filed.[3] Mr. Bridgewater presumably would be available to testify at a trial.  However,

he has explained that he witnessed the accident while stopped at a gas station, a block

east of the Jefferson and Grand Boulevard intersection.  Thus Plaintiffs have not

shown that he could offer admissible testimony to dispute the statements from

witnesses stopped at the intersection that Agent Lane slowed down before entering the

intersection.

---

[2] Based on their timing, the statements do not constitute excited utterances or
present sense impressions, which are excluded from the rule against hearsay.  *See*
Fed. R. Evid. 803(1), (2).

[3] Her statement to the Border Patrol investigator does not fall within any of the
hearsay exceptions set forth in Federal Rule of Evidence 804 for when a declarant
is unavailable as a witness.  *See* Fed. R. Evid. 804.

14

Based on these evidentiary rulings, the Court finds no evidence that Agent Lane failed to slow down before entering the Jefferson and Grand Boulevard intersection, or that he failed to yield.  Although mentioned in their response brief, Plaintiffs offer no evidence (admissible or otherwise) to support a finding that Agent Lane was traveling at an excessive speed.

## IV.   Applicable Law and Analysis

The Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity and subjects the United States to liability for certain "tort claims, in the same manner and to the same extent as a private individual under like circumstances . . .." 28 U.S.C. § 2674.  Specifically, the United States is liable under the statute

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346.  Pursuant to the plain language of § 1346, the FTCA requires federal courts to apply the law of the jurisdiction in which the alleged tort occurred in determining whether a negligent act or omission has been established.  *Id.*; *Fries v. United States*, 170 F.2d 726, 730 (6th Cir. 1948).  Thus, to prevail, Plaintiffs must establish that Agent Lane was negligent under Michigan law.

Michigan law provides that a vehicle traveling across an intersection monitored by traffic control signals ordinarily may not proceed through a steady red signal.

15

Mich. Comp. Laws § 257.612(1)(c).  By statute, however, the driver of an emergency vehicle may "[p]roceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation."  *Id*. § 257.603(3)(b).  The driver of an emergency vehicle may also exceed the speed limit "so long as he or she does not endanger life or property."  *Id*. § 257.603(3)(c).  The statute explicitly limits these exemptions to emergency vehicles sounding "an audible signal by bell, siren, air horn, or exhaust whistle" and "displaying a flashing, oscillating, or rotating red or blue light" visible from specified distances.  *Id*. § 257.603(4).

The driver of a vehicle approached by an emergency vehicle which has flashing lights and is "giving audible signal by siren, exhaust whistle, or bell" must yield the right of way, immediately pull over, stop, and remain in that position until the emergency vehicle passes.  Mich. Comp. Laws § 257.653(1)(a).  However, where the driver has a green light, he or she " 'ha[s] a right . . . to cross the intersection *unless*, by the reasonable exercise of the senses of sight and hearing, he should have noticed or heard warning to the contrary.' "  *Placek v. City of Sterling Heights*, 275 N.W.2d 511, 524 (Mich. 1979) (emphasis added) (quoting *City of Lansing v. Hathaway*, 273 N.W. 403 (1937)).  "It is the duty of the driver of an automobile to be fairly alert as to potential dangers that may be readily seen or heard . . .."  *Holser v. City of Midland*, 48 N.W.2d 208, 211 (Mich. 1951).  Nevertheless, the obligations incumbent upon all drivers "does not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of persons using the highway."  Mich. Comp.

16

Laws § 257.643(2); *see also Tomcsik v. United States*, 720 F. Supp. 588, 592 (E.D. Mich. 1989) (citing *Kalamazoo v. Priest*, 49 N.W.2d 52, 54 (Mich. 1951)).

The undisputed facts establish that Agent Lane exercised due care when he responded to the emergency call on November 17, 2011. He immediately activated his marked cruiser's emergency siren and overhead lights. He slowed and stopped for traffic, people not in the crosswalk, and at intersections. He additionally used his "yelp" button to alert drivers and pedestrians of his presence. Agent Lane similarly slowed and used his yelp button as he approached the intersection of Jefferson and Grand Boulevard. He looked for cars and pedestrians before proceeding into the intersection. Aside from Mr. Kabir's vehicle, all other traffic at the intersection came to a stop in response to Agent Lane's presence.

It was a sunny day. Agent Lane's view of oncoming traffic was not obstructed when he proceeded into the intersection. Nothing obstructed Plaintiffs' view of the intersection or westbound Jefferson traffic. Mr. Kabir did not see Agent Lane's vehicle, because he never looked to his right (from where Agent Lane's vehicle was approaching the intersection) before entering the intersection.

Under these circumstances, even if Mr. Kabir had a green light, he was required to yield the right of way to Agent Lane's cruiser, as its siren was sounding and its lights were flashing. Mr. Kabir's assertion that he did not hear the cruiser's siren or see its flashing lights does not matter, as he had a duty to be alert to potential dangers.

17

The response of other drivers demonstrates that the sirens were audible and the lights were visible.

## V.     Conclusion

In short, on the undisputed facts, no reasonable juror could find that Agent Lane acted negligently when he responded to the emergency call on November 17, 2011.  Plaintiffs' FTCA claim against the United States therefore fails as a matter of law.  Having reached this conclusion, the Court finds it unnecessary to address the government's alternative summary judgment arguments.

Accordingly,

**IT IS ORDERED**, that Defendant's Motion for Summary Judgment is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: June 30, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, June 30, 2015, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager

18